IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

QUEED MOSBY,                                )
                                            )
       Plaintiff,                       )
                                            )
v.                                          )      2:04cv889
                                            )
JO ANNE B. BARNHART,                        )
Commissioner of Social Security,            )
                                            )
       Defendant.                       )

## MEMORANDUM OPINION AND ORDER OF COURT

**I.    Introduction**

Plaintiff, Queed Mosby, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), which denied two of her applications for supplemental security income ("SSI") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-403; 1381-1383(f).

**II.    Background**

    **A.    Facts**

Plaintiff was born on June 21, 1947. R. at 391, 512. She dropped out of high school but later obtained her G.E.D. R. at 514-15. She has not engaged in substantial gainful work activity since 1979, and therefore has no past relevant work experience. R. at 393, 515. The record reflects that Plaintiff suffers from, *inter alia*, allergies, asthma, and knee and back pain. *See*, *e.g.*, R. at 385.

    **B.    Procedural History**

Plaintiff has appealed from two adverse decisions in the instant action. Plaintiff initially filed an application for SSI on November 13, 1995, in which she claimed total disability since March 1, 1993 due to severe allergies, bronchial asthma and knee and back pain. R. at 385, 400. An administrative hearing was held on October 14, 1997 before

Administrative Law Judge Ronald J. Thomas ("ALJ Thomas"). R. at 394. Plaintiff was represented by counsel and testified at the hearing. R. at 385. Noel Plummer, an impartial vocational expert, also testified at the hearing. *Id*.

On February 12, 1998, ALJ Thomas rendered an unfavorable decision to Plaintiff in which he found that she retained the ability to perform light exertional work with some environmental limitations (*i.e.*, no dust, fumes, gases and the like), and that she could make an adjustment to work which exists in significant numbers in the national economy (*e.g.*, dietary person, inspector and stock clerk). R. at 393. Therefore, ALJ Thomas concluded that Plaintiff was not "disabled" within the meaning of the Act. R. at 394. On April 8, 1998, Plaintiff requested that the Appeals Council review this decision. R. at 378-80.

On July 1, 1998 and April 7, 1999, while her appeal of ALJ Thomas' decision was pending before the Appeals Council, Plaintiff filed two more applications for SSI. R. at 77-80. Another administrative hearing was held on September 7, 2000 before Administrative Law Judge James Pileggi ("ALJ Pileggi"). R. at 13. Plaintiff was represented by counsel and testified at the hearing. R. at 13. The transcript reflects that a vocational expert did not testify at the hearing. *See* R. at 29-46.

On January 22, 2001, ALJ Pileggi rendered an unfavorable decision to Plaintiff in which he found that she retained the ability to perform light exertional work, and that she could perform jobs which existed in significant numbers in the national economy. R. at 20-21. Therefore, ALJ Pileggi concluded that Plaintiff was not "disabled" within the meaning of the Act. R. at 21. ALJ Pileggi recognized in his opinion that at the fifth step of the sequential evaluation process the Commissioner must demonstrate that a claimant can perform other work, and he recognized that Plaintiff had no transferable skills from any past relevant work. R. at 18. However, ALJ Pileggi failed to identify any other jobs that Plaintiff could perform given her limitations. *See id.* at 18-21. On March 26, 2001, Plaintiff requested that the Appeals Council review the decision of ALJ Pileggi. R. at 9.

Both decisions became the final decisions of the Commissioner on April 9, 2004, when the Appeals Council denied Plaintiff's requests to review the decisions. R. at 5. On June

14, 2004, Plaintiff filed her Complaint in this Court in which she seeks judicial review of the Commissioner's determination that she is not "disabled." The parties have filed cross-motions for summary judgment with respect to the first decision, and the Commissioner has moved for a remand of the second decision. Plaintiff contends that the first decision is not supported by substantial evidence, and that she is therefore entitled to an award of benefits. *See* Pltf's Brief at 4. Plaintiff's summary judgment filings do not address the merits of the second decision in any meaningful way given her contention that her right to benefits had accrued as of the time of the first decision. *See* Pltf's Brief at 2 n.1. The Commissioner contends that the first decision should be affirmed as it is supported by substantial evidence, and that the second decision should be remanded for reconsideration. *See* Def's Mot. & Brief. The Court agrees with the Commissioner and will therefore grant the Motion for Summary Judgment and the Motion for Remand filed by the Commissioner, and will deny the Motion for Summary Judgment filed by Plaintiff.

**III.     Legal Analysis**

   **A.     Standard of Review**

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g), 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant

(1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1)  by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1.  *See Heckler v. Campbell*, 461 U.S. 458 (1983);  *Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777;  or,

> (2)  in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes the claimant from returning to his or her former job.  *Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777. Once it is shown that a claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given the claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine

whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.").

In the first decision at issue, ALJ Thomas determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. In making this determination, ALJ Thomas concluded that Plaintiff's capacity to perform light work was "diminished by her inability to work in exposure to (*sic*) environmental irritants such as poor ventilation, dust, fumes, gases, odors, humidity, wetness, temperature extremes and pollen." R. at 393. He also recognized in his hypothetical question to the vocational expert that Plaintiff required "the ability to alternately sit or stand at will - a sit/stand option." R. at 533. Despite these limitations, the vocational expert testified and ALJ Thomas found that Plaintiff could perform work as a dietary person, inspector and stock clerk, and that these jobs existed in significant numbers in the national economy. R. at 393, 533-34.

In the second decision at issue, ALJ Pileggi determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. In making this determination, ALJ Pileggi concluded that Plaintiff had the capacity to perform light work, but *did not* find that Plaintiff could not be exposed to environmental irritants, or that she required a sit/stand option. R. at 21. However, presumably because no vocational expert testified at the second hearing, ALJ Pileggi did not identify other jobs which Plaintiff could perform given her limitations. Instead, ALJ Pileggi apparently relied upon section 202.13 of the Medical-Vocation Guidelines, 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 2, to reach his conclusion that Plaintiff was not disabled. *See* R. at 21.

### B.     Discussion

As set forth in the Act and applicable case law, this Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir.), *cert. denied.*, 482 U.S. 905 (1987).

The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

      1.    <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff contends that ALJ Thomas erred in finding that she had the capacity to perform light work with environmental limitations. Pltf's Brief at 4. Plaintiff argues that she was actually limited to sedentary work, and given her (alleged) limitation to sedentary work, her age of 50 at the time of the first hearing, and her lack of prior relevant work experience, she was "disabled" pursuant to section 201.12 of the Medical-Vocational Guidelines. Pltf's Brief at 2 n.1, 4-7. As Plaintiff points out, section 201.12 of the Medical-Vocational Guidelines compels a finding of "disabled" if the claimant is 1) closely approaching advanced age (*i.e.*, age 50-54); 2) is a high school graduate whose education does not provide for entry into skilled work; 3) has no previous work experience or has performed only unskilled work; and 4) is limited to sedentary work. 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 2, § 201.12. At the time of ALJ Thomas' decision Plaintiff clearly met the first three requirements. However, ALJ Thomas found that Plaintiff was limited to light work, and therefore the relevant section of the Medical-Vocational Guidelines (§ 202.13) did not compel a finding of "disabled." *See* 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 2, § 202.13.

The Court must decide whether substantial evidence supports ALJ Thomas' finding that Plaintiff could perform light work. If not, as Plaintiff contends, she is entitled to benefits as of the date she turned 50 years of age. The Commissioner's regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do

> sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). By contrast, "sedentary work" is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

The Court finds and rules that substantial evidence supports ALJ Thomas' finding that Plaintiff could perform light work. At the relevant time Plaintiff's impairments were allergies, asthma, and knee and back pain. *See*, *e.g.*, R. at 385. ALJ Thomas adequately accommodated these impairments by limiting Plaintiff to light work, and by imposing the additional limitations of 1) a "sit-stand" option and 2) no environmental irritants. There is little medical evidence that Plaintiff was limited to sedentary work within the meaning of 20 C.F.R. § 416.967(a), and the evidence which does exist is entitled to little weight.

With respect to her allergies, Plaintiff testified that she received allergy shots, took pills and used an inhaler to control her symptoms. R. at 516-17. Plaintiff was examined by Marsha Pokriva, M.D. on May 24, 1996 and was diagnosed with asthma and allergies. R. at 460. Dr. Pokriva reported that Plaintiff improved with treatment, and that her prognosis was "good as long as she gets treatment ..." R. at 465.

On May 28, 1996, Plaintiff underwent pulmonary function testing, which revealed that her forced vital capacity (FVC) and her one-second forced expiratory volume (FEV1) were seventy-five (75) and seventy-seven (77) percent, respectively. R. at 453-54. The computerized interpretation of these statistics revealed no obstructive lung defect, and the reviewing physician indicated that the results suggested only a "mild restriction." R. at 454. On June 4, 1996, N. Tran, M.D., a state agency physician, reviewed the evidence of record and opined that Plaintiff's asthma was well-controlled by medication. R. at 444.

With respect to her back, Plaintiff testified that she took 800 milligram ibuprofen tablets to relieve the pain. R. at 520. Plaintiff also acknowledged that she did not wear a back

brace and did not need a cane or crutches to move around. R. at 520. Additionally, despite her alleged impairments, Plaintiff reported that she lived by herself and did all of her own cooking, cleaning and shopping, and Plaintiff testified that when she runs the vacuum cleaner she can move furniture that is "not real heavy." R. at 421, 514, 523.

With respect to her knees, the evidence clearly reflects that Plaintiff experienced pain in her knees. However, the evidence reflects that Plaintiff's knee pain improved with proper treatment, and although said pain was significant, Plaintiff's treating physician, Thomas A. Mutchler, M.D. ("Dr. Mutchler"), never opined that she was limited to sedentary-type activities due to her pain. Additionally, Plaintiff testified at the first hearing that she could walk "[a]bout a couple blocks" without difficulty. R. at 526.

Dr. Mutchler began to treat Plaintiff on May 23, 1996. R. at 496. He formed an impression of chrondomalacia of both knees. R. at 496. According to the notes, "[t]he pain is problematic for [Plaintiff], particularly on stairs. Down stairs is worse than up stairs. Sitting in a chair is also problematic for her." R. at 496. Dr. Mutchler injected both knees "with good pain relief" and referred Plaintiff to physical therapy. R. at 496. On June 27, 1996, Dr. Mutchler examined Plaintiff's knees and found that although she had mild patellar crepitation, she showed good range of motion, ambulated without antalgia, and was able to perform straight leg raises against resistence. R. at 495. The notes from that examination reflect that "after cortisone injections and with her straight leg raise routines [Plaintiff] is approximately 80 percent better." R. at 495. Plaintiff received additional shots on February 27, 1997 "with good pain relief." On April 15, 1997, Dr. Mutchler injected Plaintiff's right knee "with good pain relief" and warned Plaintiff "that she needs to do the physical therapy in order to have relief of her pain." R. at 493.

The records of Dr. Mutchler reflect that Plaintiff received additional injections and generally continued to improve. R. at 490-93. However, due to continued pain in the right knee Dr. Mutchler recommended that Plaintiff undergo arthroscopic lateral release surgery on that knee. R. at 489. The surgery was performed on October 23, 1997 and yielded "a decrease

in [Plaintiff's] patellar pain ..." and "marked improvement in [Plaintiff's] patellar mobility." R. at 488, 524.

The evidence which directly addresses whether Plaintiff could perform "sedentary," "light" or "medium" work is somewhat varied. Dr. Tran reviewed the evidence of record on June 4, 1996 and opined that Plaintiff could perform a range of *medium* exertional work. R. at 438-45. C.D. Young, M.D. ("Dr. Young"), a consulting examiner, had earlier opined that Plaintiff could lift and carry a maximum of ten (10) pounds, could stand and walk for less than two (2) hours, could sit for less than six (6) hours, and had unlimited ability to push and pull. R. at 451. These limitations are consistent with "sedentary work." *See* 20 C.F.R. § 416.967(a). Although Dr. Young opined that Plaintiff was so limited, those limitations are not mentioned in the body of his detailed report, and the report does not specifically discuss Plaintiff's ability to lift, carry, stand, walk, sit, push and pull. *See* R. at 447-50. When a doctor's opinion is inconsistent or unsupported by the record, the ALJ can give such an opinion less weight. 20 C.F.R. § 416.927(d)(3),(4). Given the absence of any other medical evidence that Plaintiff was limited to sedentary work, and the fact that the other medical evidence of record does not support such a limitation, the Court finds no error in the ALJ's failure to accept the physical limitations found by Dr. Young.[1] In sum, substantial evidence supports ALJ Thomas' finding that Plaintiff could perform light work with the additional limitations of 1) a "sit-stand" option and 2) no environmental irritants. Therefore, the Court will affirm the Commissioner's decision of February 12, 1998.

---

[1] The record contains one page of what appears to be a welfare application completed by J. Baron, M.D. on February 22, 1995. R. at 446. The patient is identified as "Queen Mosley," the box for "incapacitated" is checked, and the page indicates that Plaintiff is limited by "shortness of breath with exertion." R. at 446. This conclusory opinion is not supported by any objective medical evidence and is not consistent with considerable evidence that Plaintiff's asthma and allergies were not debilitating. Therefore, it is not entitled to significant weight.

      2.      <u>The Commissioner's Motion to Remand</u>

The Commissioner represents to the Court that Plaintiff does not object to remand of the January 22, 2001 decision. Defendant's Brief at unnumbered 1 n.1. Plaintiff, on the other hand, contends that she *does object* to remand of the second decision because, as discussed above, she is entitled to benefits as of the date of the first opinion pursuant to the Medical-Vocational Guidelines. Plaintiff's Response to Defendant's Motion to Remand at unnumbered 1-2. As explained above, the Court does not agree with Plaintiff's argument regarding the Medical-Vocational Guidelines. Moreover, regardless of whether Plaintiff consents to the remand of the second decision, neither party has briefed the merits of the second decision, and the Court cannot review said decision without the benefit of briefing by the parties. Therefore, the Court will grant the Commissioner's Motion to Remand the decision of January 22, 2001. The Court expresses no opinion on the merits of that decision, but does note the lack of "vocational expert" evidence to support ALJ Pileggi's conclusion that Plaintiff could perform other jobs which exist in the national economy. On remand the Commissioner may reconsider which jobs, if any, Plaintiff can perform given her limitations, and may reconsider any other issue(s) and/or evidence that may have been overlooked.

**IV.**      **Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of ALJ Thomas and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. As for the decision of ALJ Pileggi, said decision will be remanded for further proceedings, and given Plaintiff's numerous health conditions the Commissioner may well find that she is entitled to benefits. For these reasons, the Court will grant the Motion for Summary Judgment and the Motion for Remand filed by

the Commissioner, and will deny the Motion for Summary Judgment filed by Plaintiff.  An appropriate Order follows.

                                              McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QUEED MOSBY,** | ) |
| **Plaintiff,** | ) |
| v. | ) 2:04cv889 |
| **JO ANNE B. BARNHART,**<br>**Commissioner of Social Security,** | ) |
| **Defendant.** | ) |

## ORDER OF COURT

AND NOW, this 28th day of March, 2006, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED, and DECREED that:

1. Defendant's Motion to Remand her Decision of January 22, 2001 and for Summary Judgment Regarding her Decision of February 12, 1998 (*Document No. 10*) is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment (*Document No. 14*) is **DENIED**;

3. The Commissioner's decision of February 12, 1998 is **AFFIRMED**;

4. The Commissioner's decision of January 22, 2001 is **REMANDED FORTHWITH** to the Commissioner of Social Security for further proceedings; and

5. The Clerk will docket this case as closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Zenford A. Mitchell, Esquire
      Email: ZnZAM@aol.com

      Paul Kovac, AUSA
      Email: paul.kovac@usdoj.gov